ZENIA K. GILG, SBN 171922
Sausalito Plaza
1505 Bridgeway, Suite 103
Sausalito, CA 94965
Telephone:  415.324.7071
Facsimile:  415.324.7078
Email: zenia@jacksonsquarelaw.com

Attorney for Defendant
KRISTEL KUBUROVICH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  CR 16 00373--EJD |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF THE SPEEDY TRIAL ACT |
| v. | |
| GOYKO GUSTAV KUBUROVICH and KRISTEL KUBUROVICH, | |
| Defendants. | |
| _____/ | |

## I.   **INTRODUCTION**

Defendant Kristel Kuburovich has endured nearly eight years of investigations and prosecutions none of which have resulted in her conviction, but all of which have made it impossible for this 29 year old woman to move forward with her life.[1] It has now been nearly ten years since the alleged offense conduct and two years since she made an initial appearance before this Court. Ms. Kuburovich has maintained her innocense since the inception, and throughout negotiations and court proceedings, her attorney has advocated for a dismissal of

_____

[1]  A state investigation into the Kuburovichs' operation of the medical cannabis dispensary MediLeaf began when Kristel Kuburovich was only 21 years old in December of 2010 and did not end until all defendants were acquitted of all charges on May 31, 2016. Seven weeks later the present federal Indictment was filed, thus, extending Ms. Kubrovich's ordeal to nearly eight years and essentially stalling her life during a time when most young adults are building their future.

the charges here lodged against her. By this motion and for the reasons stated below, the defense asserts the Government failed to act in good faith when seeking and obtaining a stipulation to continue the trial on March 2, 2018, therefore, invalidating the exclusion of time and requiring dismissal of the Indictment.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    August 2016 through March 2, 2018

On August 25, 2016, a grand jury returned the present Indictment alleging offense conduct occurring on or about May 25, 2010. Ms. Kuburovich is charged with aiding and abetting her father and codefendant Goyko Kuburovich, in Counts One and Two of the three Counts below listed:

Count One: *18 U.S.C. § 157* (bankruptcy fraud; aiding and abetting);

Count Two: *18 U.S.C. §§ 152(1)* and *2* (concealment of assets in bankruptcy proceeding; aiding and abetting);

Count Three: *18 U.S.C.§ 152(3)* (false statement in bankruptcy proceeding); and,

Forfeiture Allegation: *18 U.S.C. § 981(a)(1)( C)* and *21 U.S.C. § 2461( c)*.

On September 7, 2016, Ms. Kuburovich made her initial appearance and present counsel's substitution was made on September 28, 2016. Initial discovery, which was delivered in early November 2016, consisted of approximately 10,000 pages. After reviewing this material, it became apparent that discussions should be had in an attempt to convince the Government to dismiss the case against Ms. Kuburovich.

On May 8, 2017, a meeting was held at the Office of the United States Attorney to discuss the case and present defendants' proposal for global resolution. This meeting was attended by counsel for Ms. Kuburovich, Zenia Gilg, counsel for Mr. Kuburovich, J. David Nick, the first assigned Assistant United States Attorney (AUSA), Gary Fry, and case Agent Sandy Munoz.  Based exclusively on review and analysis of the discovery produced by the Government, counsel for Ms. Kuburovich advocated for a dismissal of the charges against her

client and Mr. Nick discussed plea potentials for Mr. Kuburovich.[2] The meeting was followed up by written and oral communications; however, on July 10, 2017, AUSA Fry sent an email stating: "Pardon my poor memory, but where are we in settlement of this case? Are you waiting for an offer? I remember, I believe a defense offer." On this same date, both defense counsel responded reiterating their clients' respective positions, including reminding Mr. Fry he was supposed to be determining whether a dismissal of the charges against Ms. Kuburovich was appropriate, and asking if he would like to speak further. After simply thanking counsel for their responses, the next communication received from Mr. Fry was on July 21st advising that he would be requesting a continuance of a status conference then set for July 24th. Defendants agreed and the next status conference was set for September 11, 2017.

On August 28, 2017, Mr. Fry wrote an email, ostensibly an offer to settle, wherein the defendants would plead to all charges in exchange for the Government recommending the low end of the Guideline range for both defendants, "whatever that turns out to be." It was then apparent the defense proposal was not being considered and the case was going to proceed to motions and trial. Accordingly, at the September 11, 2017 status conference a jury trial was set for March 20, 2018.

On that same date, the defense served an informal discovery request asking for specific discovery relevant to a claim of vindictive prosecution. Although the defense thought it likely the Government would not voluntarily produce the requested materials, a response was a necessary predicate to filing a motion to compel. Counsel, therefore, sought and obtained an assurance from Mr. Fry that he would respond within a week; however, on September 19,

---

[2] The defense identified the obvious weaknesses in the prosecution theory many of which are articulated in the previously filed Memorandum of Points and Authorities in Support of Motion to Dismiss for Vindictive Prosecution (Doc. #68-1 at pp. 12-16) and Reply brief, filed January 29, 2018 (Doc. # 76 at pp. 9-11) (discussing the weakness of the federal case as demonstrated by the fact that the charges are not justified by the evidence, and the highly unusual nature of the charges as they relate to Kristel Kuburovich). These documents are incorporated by reference, in full, herein. Similar analysis of the facts and applicable legal arguments were also presented throughout the negotiations in hopes of convincing the Government to agree to dismiss Ms. Kuburovich's case.

2017, Mr. Fry sent defense counsel an email stating he needed a "few more days to determine [the office's] position regarding discovery request[,]" but assured he was "working on it."

Having received no further response, on October 17, 2017, counsel saw Mr. Fry in court while appearing on another matter and reminded him of the letter and, at his request, sent a reminder email. Still having not been advised of the Government's position, another email was sent on November 9, 2017, stating if the defense did not get a response by November 14th, it would assume his office would not agree to provide the requested discovery. An email was sent by Mr. Fry on November 13th, over two months after the discovery had been requested, stating: "There is no way my office will agree to voluntarily provide you with the material you want." And for the first time the defense learned that Mr. Fry was retiring on December 31, 2017.

On December 1, 2017, defendant filed a Motion to Compel Discovery Re Vindictive Prosecution. (See Doc. # 39.) On December 6, 2017, Mr. Fry filed United States' Motion for Continuance in Due Date for Response to Defendant Kristel Kuburovich's Motion to Compel Discovery Re Vindictive Prosecution. (See Doc. # 40.) Defendant filed an Opposition, arguing in part, that the Government should not now be allowed to interfere with the defendants' speedy trial rights by claiming there will be a change in prosecutors handling the case. (Doc. # 45.) The Honorable U.S. Magistrate Judge Nathaniel M. Cousins denied the Government's requested continuance. (Doc. # 50.)

Following the Magistrate's denial of the Motion to Compel, additional pretrial motions were litigated. AUSA Timothy Lucey was assigned to the case after Mr. Fry's retirement and Ms. Gilg initiated a meeting with Mr. Lucey in an effort to convince him of the righteousness of dismissing the case against her client. Defense counsel also made clear, for the reasons expressed throughout this motion, her client would not be willing to continue the trial date.

On February 5, 2018, AUSA Scott Simeon filed his Notice of Attorney Appearance. (Doc. # 71.) Two days later, Mr. Simeon sent an email to defense counsel indicating that

AUSA Tim Lucey,[3] had prepared a proposed stipulation continuing the motion hearing to April 16th, pretrial conference to August 20th and trial to September 11th of 2018.

Within an hour of receiving this email, counsel for Ms. Kuburovich responded:

Welcome to the case Scott but Yikes! No one mentioned a continuance to me. I do not think my client will agree. We need to talk. I am not trying to be difficult but Tim knows the issues with my client and I worry the stress is going to have a sever impact on her well being.

In a follow-up telephone conversation, Ms. Gilg unequivocally told Misters Lucey and Simeon that while a continuance of the motion's date would not be objectionable, she and her client would not agree to a continuance of the trial. Ms. Gilg suggested that if the Government needed more time to prepare due to the change in prosecutors, they should file a motion to continue, but was advised their office was not inclined to so move, thus, they were seeking the defendant's agreement. Ms. Gilg was clear that her client would not agree to a continuance, explaining in part, although she understood Misters Lucey and Simeon were new to the case, there had been long periods of delay not caused by the defense, including, for example Mr. Fry's lackadaisical attitude and slow responses in conducting negotiations and responding to discovery requests. She also emphasized the stress and anxiety experienced by Ms. Kuburovich and her concern for the health and well-being of her client made it impossible for her to agree to further delay.

Mr. Kuburovich's counsel, J. David Nick, responded via an email on February 8th to the proposed stipulation to continue the trial, stating he will "ONLY stipulate to continuing the MOTIONS HEARING ... However, the parties are not willing and will NOT STIPULATE to a trial continuance." (Emphasis in original.)

The following day, a telephone conference was had during which the parties discussed potential pretrial resolution. Following these discussions, on February 12th, the Government proffered a written global settlement offer for Mr. Kuburovich to plead guilty to County One,

---

[3] Undisclosed to the defense was the fact that Mr. Lucey was also soon to be leaving the office to take a position in the private sector. In fact it was only on or about February 12th, by overhearing attorney chatter in the courtroom, that counsel learned of his impending departure.

Bankruptcy Fraud, with a base offense level 6, and stipulated loss amount of $868,000 (+ 14 levels), misrepresentation during bankruptcy proceeding (+2 levels), acceptance of responsibility (- 3 levels) and an adjusted Guideline offense level 19. The offer to Ms. Kuburovich included a proffer and a deferred prosecution agreement. As it had been made clear during the discussions prior to receiving this offer that Ms. Kuburovich would not accept anything short of a dismissal at the time of Mr. Kuburovich's sentencing, assuming a global resolution was reached, and that Mr. Kuburovich would never agree to a stipulated loss amount of $868,000, this offer was quickly rejected.[4]

Further settlement discussions took place resulting in the Government amending its offer on February 14, 2018 to allow Mr. Kuburovich to be free to argue any loss amount at sentencing. Ms. Kuburovich, through counsel, again made it clear that she would not accept a protracted deferred prosecution, but instead only a dismissal of her case. On February 16th, Mr. Nick advised that his client had considered and rejected the amended offer.

Pretrial motions proceedings thereafter terminated at the hearing on February 26, 2018. The minute entry on this same date reflects that the Court affirmed: "Excusable Delay: Effective preparation of counsel as to EACH Defendant. Ends: 3/20/18." (See Doc. # 77.)

On March 2, 2018, Mr. Simeon emailed defense counsel indicating the Government would be "willing to reopen plea discussions in good faith, as there may be other paths toward a resolution, but it would take some time ... to get approval[.]" This email also stated:

> **[I]n order for plea discussions to resume, we all have to reach a stipulation to vacate or continue the trial date today.** The government's offer will not improve after I spend the next three days preparing pretrial filings, and, as I

---

[4] The information presented in this motion regarding defendants' plea negotiations may not be considered as evidence of guilt, used against the defendants or introduced at trial. (See, Federal Rules of Criminal Procedure, Rule 11(f) and Federal Rules of Evidence, Rules 408 and 410.) Instead, the information is discussed for the limited purpose of consideration in making the findings pertinent to deciding the present Motion. (See, e.g., Rule 408(b) ("Exceptions" to the general rule of prohibited uses of "Compromise Offers and Negotiation" under this rule includes: "The court may admit this evidence for another purpose, such as "negating a contention of undue delay," or here in the present case, affirming a claim of undue delay); see also, Rule 410(a) (prohibiting use of participation in plea discussions "against the defendant," not the Government).

mentioned before it becomes harder for me to get approval the closer we get to a trial date.

(Emphasis in original.)

Following this email, Ms. Gilg spoke with Mr. Simeon again emphasizing that her client was reluctant to a continuance and would accept nothing short of a dismissal. After being assured he understood defendant's position and that a continuance of the trial would be necessary in order for him to pursue this dismissal and a resolution acceptable to Mr. Kuburovich a continuance was agreed upon. Ms. Kuburovich, through counsel, made it abundantly clear she would not accept a deferred prosecution or diversion, and was only agreeing to a continuance in reliance on these representations made by Mr. Simeon. The Government prepared and filed the Stipulation and proposed Order on March 2, 2018, and the Order was issued on this same date, resulting in the trial being continued to September 11, 2018.[5] (See Doc. # 80.)

Pursuant to this Stipulation and Order, the basis for the delay was to allow necessary time "continuity of counsel" and "effective preparation" for plea negotiations, concluding the "ends of justice served by excluding time up to and including September 11, 2018, outweigh the best interest of the public and defendants in a speedy trial. *See* § 3161(h)(7)(A)." (See Doc. # 80.) Defendants were prepared to proceed to trial on the date previously scheduled and at no point did they indicate further time was needed to prepare for trial.

What transpired after the trial was continued, as detailed below, reveals the Government's intent in seeking a stipulated continuance was not to resolve this case in a manner acceptable to the defendants and the agreement was extracted under false pretenses.

**B.**   **March 2 through July 31**

Four days after the continuance was granted, Ms. Gilg, sent an email to Mr. Simeon stating: "I know the pressure is off but don't want too much grass to grow under this one. As

---

[5] After the continuance, Ms. Kuburovich and her family, including Mr. Kuburovich, moved out of county, giving up her job, while detrimentally relying on an informed belief that this case would settle.

you both know my client is very much looking forward to moving on with her life and I hope we can get this resolved this month? Just a friendly nudge." Mr. Simeon responded within an hour as follows:

> I too would prefer to resolve this sooner than later. Please give me until the end of this week, perhaps the beginning of next week to finish talking with my supervisor about my discussions with you and David, and then get back to you both with a proposed resolution. Naturally, that doesn't preclude either of you from reaching out to me or making suggestions to me either. I just want to assure you that I'm still working on it.
>
> On a separate but related not, I was working on another batch of discovery on Friday, but since I didn't stay late (or over the weekend) I didn't finish processing it all. I'll send it to you tomorrow.[6]

On March 9th, an offer letter was sent asking defendants to first agree before Mr. Simeon would submit it for "final ... formal" approval. The global resolution included a proffer followed by dismissal of Ms. Kuburovich's case at the time of codefendant's sentencing; and for Mr. Kuburovich to plead guilty to a Superseding Information Count One, Obstruction of Justice, with various potential Guideline adjustments left open for argument at sentencing but with an agreed upon Guideline adjusted offense level range of 12 to 17. Ms. Kuburovich's counsel responded the same day that she accepted the proposal. On March 15th, Mr. Kuburovich's counsel accepted the offer on behalf of his client.

Two months later, on May 15th, Mr. Simeon emailed advising the March 9th offer was "officially disapproved," but the prior offer including Mr. Kuburovich's plea to bankruptcy fraud with a cap on loss, and pre-plea diversion and dismissal of charges against Ms. Kuburovich was "unofficially approved." That is, "'unofficially' because I can't get official approval until defendants agree to the offer[.]" Mr. Nick, however, had indicated he did not

---

[6] On or about March 14th defense counsel received new discovery consisting of over 3000 pages and several audio recordings including one of a statement made by Ms. Kuburovich never before disclosed. This material also included an interview with Charles B. Greene, the attorney representing Mr. Kuburovich in the initial bankruptcy filing. Mr. Greene here reports he did not remember the specifics about his meeting with Mr. Kuburovich surrounding the bankruptcy filings, and did not recall whether or not he knew about the $750,000 transfer made to Kristel Kuburovich 18 months before the filings. Importantly, he also stated he was not sure he would have advised such a transfer be disclosed in any event.

want to present offers to his client for consideration that had not been approved, thus, requested the Government make an offer that is approved.

On June 15th, Mr. Simeon sent a draft Plea Agreement for Mr. Kuburovich. In his email, he stated: "This is only a draft because I'm not able to seek approval ... until I hear from you that your client is willing to accept the government's offer." In addition, Mr. Simeon represented the proposal would be part of a global resolution which provided that if both defendants complied with terms, including a proffer by Ms. Kuburovich, her case would be dismissed at the time of Mr. Kuburovich's sentencing. The email further detailed the terms of the Plea Agreement, which had Mr. Kuburovich plead guilty to Count Two, Concealment of Assets, with a base offense level 6, then permitted the Parties to argue loss amount calculations resulting in Guideline adjustments of 0 to 14 levels (capped at $868,000). In addition, there would be an agreement to a two level increase for misrepresentation during bankruptcy proceeding, and a two to three level decrease for acceptance of responsibility (-2 or - 3 levels), thus an adjusted Guideline offense level range of 6 to 19.

Mr. Nick had advised Mr. Simeon that he would be on a family holiday until July 18th and would thereafter review the proposed Plea Agreement with his client and provide an answer by the end of the week. Mr. Simeon confirmed the offer remained open as part of a global resolution. Ms. Gilg immediately responded that Ms. Kuburovich accepted the dismissal following a debriefing. On July 20th, Mr. Nick, advised that Mr. Kuburovich was inclined to accept asking only for some clarifications and revisions which did not alter the Guideline calculations. Mr. Simeon responded he would edit the agreement to clarify Guideline calculations as had been suggested and would submit the Plea Agreement, along with the proposed dismissal of charges against Ms. Kuburovich, for approval on Monday, July 23rd.

Defendants believed once they accepted this global resolution a deal had been reached as Mr. Simeon had indicated in his May 15th email that he had obtained approval for a deal which included a cap on the loss amount for Mr. Kuburovich and dismissal of Ms. Kuburovich's case, thus, once accepted which they did after the draft Plea Agreement was

provided on June 15th, the formality of "official" approval would be obtained. The defense was under the impression they were simply waiting for minor immaterial edits to be made to Mr. Kuburovich's agreement.

However, on July 31, 2018, the Government informed defendants the Plea Agreement had been "returned" with changes so drastic that the deal was worse for both defendants than was the offer made and rejected prior to the agreement to continue the March 20th trial. As stated in Mr. Simeon's email to defense counsel, rather than a dismissal, Ms. Kuburovich would now have to "enter a post plea diversion agreement, meaning the charges would not be dismissed until after one year." As for Mr. Kuburovich, he would be required to agree to a "loss amount in the offense level range of +14 or +16[.]" The change included a greater potential loss amount calculation for Mr. Kuburovich than the offer made nearly six months earlier, and rejected prior to the continuance of the trial date. And, for the first time, rather than a pre-plea dismissal, Ms. Kuburovich would be required to enter a guilty plea with the potential for dismissal after completing one year of diversion. That is, for both defendants offers got worse, not better, than those rejected prior to agreeing to the continuance.

Mr. Nick responded within an hour, stating: "In 26 years of doing federal work I have never been put through this; its like a moving target, you propose something, the client and I agree and then this happens-very frustrating. I will let you know later if we even want to negotiate any further." As indicated by Ms. Gilg in her email response, also sent on July 31, 2018: "This is very upsetting. I made it very clear when I agreed to the continuance that diversion was not acceptable. Your office has not been negotiating in good faith. Mr. Nick and I will discuss how we want to proceed."

***

As supported by the detailed chronology and facts here presented, the defense believes the Government never intended to resolve this case in a manner acceptable to the defendants, but instead used false pretenses and bad faith to obtain the "ends of justice" continuance and exclusion of time under *18 U.S.C. § 3161(h)(7)(A)*. Therefore, the 193 days between March 2nd

through September 11th should not have been excluded. Defendant urges this Court to find the Government's manipulative and purposeful delay in bringing this case to trial mandates a finding that Ms. Kuburovich's rights under the Speedy Trial Act have been violated requiring a dismissal. Furthermore, dismissal should be granted with prejudice. In addition, apart from considering the Government's conduct, the exclusion of time solely for plea bargaining should be found invalid.

### III.   MS. KUBUROVICH'S SPEEDY TRIAL RIGHTS HAVE BEEN VIOLATED, THUS, A DISMISSAL IS MANDATED.

#### A.   General Legal Standards Under the Speedy Trial Act

The Sixth Amendment guarantees defendant the right to a speedy trial. *Barker v. Wingo,* 407 U.S. 514 (1972). In an attempt to bring definition to the "amorphous" speedy trial right, the Legislature enacted the Speedy Trial Act of 1974 (codified at *Title 18 U.S.C. Sections 3161-3174*) setting uniform time limits for all phases of criminal process. Under the Act it is generally required that a trial begin within 70 days of the filing of an information or indictment, or the defendant's initial appearance, whichever date last occurs. (See *§ 3161(c)(1).*)

While recognizing certain periods of delay are excludable (see *§ 3161(h)*), these delays must be justified by the facts presented in each case. If a defendant is not brought to trial within 70 days, plus the period of time allowed under valid exclusions, the court must dismiss the indictment on motion of the defendant. (See *§ 3162(a)(2).*) These statutes reflect the Legislative finding that a trial which is not brought within 70 days is not speedy, and therefore, requires a showing of good cause to justify the delay.

In the present case, this Court granted a continuance under *§ 3161(h)(7)(A)* based on a finding the "ends of justice' are served by taking such action outweighed the best interest of the public and defendant in a speedy trial. (See Doc. # 80.) *Section 3161(h)(7)(A)* of the Act provides:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that *the ends of justice* served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a

continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

(Emphasis added.)

Express findings for application of an "ends-of-justice" continuance and exclusion of time under *§ 3161(h)(7)(A)* are required. *Zedner v. United States*, 547 U.S. 489, 498-499 (2006) (failure to make these findings is not subject to harmless error review). Furthermore, "[n]o continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." (See *§ 3161(h)(7)( C)*.)

Factors under *§ 3161(h)(7)(B)(iv)*, including those presented in the Parties' Stipulation and Order,

formed the basis for the continuance. This section states:

(iv)  Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government *continuity of counsel*, or would deny counsel for the defendant or the attorney for the Government the *reasonable time necessary for effective preparation, taking into account the exercise of due diligence.*

(Emphasis added.)

Specifically, in the present case, the Stipulation and Order granting the "ends of justice" continuance was to allow additional time for "continuity of counsel" and "effective preparation" for the Parties' plea negotiations. (See Doc. # 80.) As demonstrated further below, the continuance of the trial and exclusion of time was based on the Government's bad faith manipulation of the Speedy Trial Act and an impermissible ground for exclusion of time, thus, rendering the exclusion of 193 days between March 20, 2018 and September 11, 2008 invalid and the Act violated.[7]

---

[7] The Government informally advised the defense it intends to seek a superseding indictment, but does not anticipate any substantive changes that would delay this case further. If a superseding indictment is filed before the hearing on this present motion, it would not reset the speedy trial clock under the statute. See, e.g., *United States v. Alvarez-Perez*, 629 F.3d

**B.  The Exclusions of Time Are Invalid Where Obtained as a Result of the Government's Failures to Act in Good Faith.**

"[I]t is the responsibility of defense counsel, the government, and the district court to take affirmative steps to protect a defendant's right to a trial within 70 days pursuant to the Speedy Trial Act." *United States v. Aviles-Alvarez*, 868 F.2d 1108, 1113 (9th Cir. 1989). The Government may not use the excludable time provisions to manipulate the Speedy Trial Act's mandates. Under *§ 3161(h)(7)( C)*, for example, the "lack of diligent preparation ... on the part of the Government" precludes a continuance. Furthermore, *§ 3162(b)* specifically prohibits the Government from making "(3) ... a statement for the purpose of obtaining a continuance which he knows to be false and which is material to the granting of the continuance or (4) otherwise willfully fail[ing] to proceed to trial without justification consistent with section *3161*[.][8]"

Regardless of the willingness of counsel to accept pretrial delay, the Speedy Trial Act assigns the Government and district courts an independent responsibility to protect both the defendant's and the public's strong interest in the timely administration of justice. *United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999). That is, a defendant cannot waive the protections of the Speedy Trial Act by stipulating to a continuance, as the right "belongs not only to the defendant but to society as well." See *United States v. Ramirez-Cortez*, 213 F.3d

1053, 1058 (9th Cir. 2010) (citations omitted); *United States v. Daychild*, 357 F.3d. 1082, 1091 n. 10 (9th Cir. 2004) (citation omitted). It may, however, add to the prejudice defendant has suffered a result of the Government's conduct in obtaining a continuance of the previously set trial date.

[8] The defense does not here contend that AUSA Simeon should be held personally accountable for what can only be described as the promulgation of false representations regarding the willingness of his office to improve on the offers rejected prior to the continuance, as it appears from the emails Mr. Simeon was acting in consultation with his supervisors when stating that he would pursue a resolution which met the criteria clearly set forth by both defense counsel. Be that as it may, in addition, pursuant to *§ 3162(b)*, the Court may impose sanctions against the attorney for the Government who willfully violates the Act including: "( C)  by imposing on any attorney for the Government a fine of not to exceed $ 250; (D)  by denying any ... attorney for the Government the right to practice before the court considering such case for a period of not to exceed ninety days; or (E) by filing a report with an appropriate disciplinary committee." "The authority to punish provided for by this subsection *shall be in addition to any other authority or power available to such court*." *Ibid.* (Emphasis added.)

1149, 1156 (9th Cir. 2000) (citation omitted) (holding that a defendant had not waived his STA claim by stipulating to a continuance in order to negotiate a plea bargain, which is not excludable under the STA's "ends of justice" provision) (discussed further in Section III.C., *infra.*).

In the present case, the Government acted in bad faith by manipulating the defense and the Court to agree to a continuance and exclusion of time on March 2, 2018 based on false pretenses. The defendants were lured into believing a satisfactory resolution would be pursued only to be told five months later that all acceptable proposals put forward *by the Government attorney* were not approved and the resulting offer was harsher on the defendants than the offer rejected in February before agreeing to the continuance. As made apparent by the communications detailed above (Section II, *infra*) the delays both prior to and after the Indictment reveal the Office of the United States Attorney failed to sufficiently protect defendants' and the public's interest in the timely administration of justice including a speedy trial. Rather than negotiating in good faith as was promised, the Government used plea bargaining as a ruse for the purpose of bypassing the Act's requirements.

Accordingly, the defense urges this Court to find the Government's manipulative and purposeful delay in bringing this case to trial mandates a finding that Ms. Kuburovich's speedy trial rights under the Act have been violated requiring a dismissal.

**C.      The Exclusion of Time for Plea Negotiations Was Invalid**.

Aside from consideration of the Government's misconduct, the delay to allow for "continuity of counsel" and "effective preparation" for plea bargaining does not provide a valid basis for an exclusion of time under the Speedy Trial Act.

The Act contains no provision expressly excluding plea negotiation periods from its statutory deadlines. *United States v. Alvarez-Perez,* 629 F.3d 1053, 1058 (9th Cir. 2010), citing, *Ramirez-Cortez*, *supra*, 213 F.3d at 1155 ("negotiation of a plea bargain is not one of the factors supporting exclusion under the Speedy Trial Act") (internal quotation and citation omitted). The only "narrow exception to this general rule ... applies when defendant notifies the

court that an agreement has been reached[.]" *United States v. Hernandez-Meza*, 720 F.3d 760, 763 (9th Cir. 2013) (citations omitted). "Being close to an agreement" is not enough[,]" and *"Alvarez-Perez* is clear on this point." *Ibid*.

The Act also does not allow time attributable to plea bargaining to be excluded under the catch-all "ends of justice" category, *§ 3161(h)(7)(A)*. *United States v. Perez-Reveles*, 715 F.2d 1348, 1352 (9th Cir. 1983) (holding that negotiation of a plea bargain is not a permissible "ends of justice" factor in granting a trial continuance); see also, *McNeely v. Blanas*, 336 F.3d 822, 828, n.7 (9th Cir. 2002); *Ramirez-Cortez, supra*, 213 F.3d 1149 (same); *United States v. Fresnoza* (No. 10-00028) 2011 U.S. Dist. LEXIS 119285, *23 (D. Guam October 14, 2011); *United States v. Biggs*, 419 F. Supp. 2d 1277, 1281-1282 (D. Mont. 2006); *United States v. Virgen-Preciado* (No. CR 04-1518-TUC-CKJ) 2006 U.S. Dist. LEXIS 75238, *4-5 (D.Az. October 16, 2006).

In the present case, the stipulated facts and basis for excluding time was thus invalid under the Speedy Trial Act. (See Doc. # 80.) The exclusion was not based on the need for "continuity of counsel" or time for "effective preparation" for trial, but instead were to advance the Parties' negotiations. Accordingly, the Speedy Trial Act was violated and this case must be dismissed, pursuant to *§ 3162(a)(2)*.

## IV. A DISMISSAL WITH PREJUDICE IS WARRANTED; ALTERNATIVELY, OTHER RELIEF MAY BE GRANTED.

### A. Dismissal with Prejudice under the Speedy Trial Act

Pursuant to *§ 3162(a)(2)*, a dismissal is mandatory when the 70-day statutory period is exceeded without excusable delay. See also, *Zedner, supra*, 547 U.S. at 499; *United States v. Taylor*, 487 U.S. 326, 334 (1988). The dismissal, however, may be granted with or without prejudice. *Ibid.* "Before a district court can enter a dismissal without prejudice, and thereby permit defendant's reprosecution, it must hold a hearing[.]" *United States v. Delgado-Miranda*, 951 F.2d 1063, 1064 (9th Cir. 1991). The decision to dismiss with prejudice is left to the guided discretion of the court. *Taylor, supra*, 487 U.S. at 334-335, 337; *Alvarez-Perez, supra,* 629 F.3d at 1062; *United Sates v. Engstrom,* 7 F.3d 1423, 1427 (9th Cir. 1993); *United States v.*

1   *White*, 864 F.2d 660, 661 (9th Cir. 1988).

2        In exercising discretion, the district court is required to apply the factors specified under

3   the Act and articulate their effect on the case. *Taylor, supra*, 487 U.S. at 333*. Section*

4   *3162(a)(2)* sets out these factors in choosing between the two remedies:

5        In determining whether to dismiss the case with or without prejudice, the court shall
         consider, among others, each of the following factors: [1] the seriousness of the offense;

6        [2] the facts and circumstances of the case which led to the dismissal; and [3] the
         impact of a reprosecution on the administration of this chapter [*18 USCS §§ 3161 et*

7        *seq.*] and on the administration of justice.

8        "In addition, the court should consider prejudice to the defendant from the delay."

9   *Alvarez-Perez, supra,* 629 F.3d at 1062, citing, *Taylor, supra*, 487 U.S. at 333-334. Moreover,

10  "a district court should consider ... the party responsible for the delay."*Bloate v. United States,*

11  559 U.S. 196, 214-215 (2010).

12       Each of these factors discussed below and applied in this case warrants a dismissal with

13  prejudice.

14                    **1.    The Seriousness of the Offense**

15       In *United States v. Caparella*, 716 F.2d 976 (2nd Cir. 1983), the appellate court held the

16  district court abused its discretion in dismissing the case "without prejudice" after finding the

17  Speedy Trial Act had been violated and dismissed the case. The lower court erred in

18  considering the "seriousness of the offense" factor weighed against a dismissal with prejudice

19  where defendant had been facing charges of felony mail theft (*18 U.S.C. § 1709*) and

20  misdemeanor opening mail without authority (*18 U.S.C. § 1703(b)*). *Id.* at 980. The Tenth

21  Circuit reasoned, "[a]s to the first factor, while recognizing that a breach of the public trust is

22  not to be ignored, we do not consider appellant's conduct a 'serious' crime, absent exacerbating

23  circumstances such as violence, which is not here present." *Ibid.* at 980.

24       In the present case, like *Caparella*, "exacerbating circumstances such as violence" are

25  not present. Moreover, Ms. Kuburovich's charges carry the same maximum statutory exposure

26  of five years (*18 U.S.C. § 1703*) as the felony charged in the *Caparella* case, and as such are

27  similarly classified as "Class E" felonies. See *Title 18 U.S.C. § 3559(a)(5).* Furthermore, in this

28

case the alleged conduct supporting defendant's charges is very remote, i.e. 10 years old. Defendants have been allowed to remain out of custody on unsecured signature bonds with pretrial supervision while awaiting trial, thus, further evidencing their charges are not the most serious. Also, in considering this factor, the court should also take into account defendants' prior record (see, *Alvarez-Perez, supra,* 629 F.3d at 1063), and here Ms. Kuburovich has not suffered any prior convictions and Mr. Kuburovich stands convicted of only misdemeanors.

In addition, since the inception Ms. Kuburovich has maintained her innocense, repeatedly demonstrating the weakness of the federal case by showing the charges are not justified by the evidence and emphasizing the highly unusual nature of the charges as they relate to her. (See, e.g., Memorandum of Points and Authorities in Support of Motion to Dismiss for Vindictive Prosecution (Doc. #68-1 at pp. 12-16) and Reply brief (see Doc. # 76 at pp. 9-11.)

Accordingly, this factor weighs in favor of granting a dismissal with prejudice. Assuming arguendo, this Court disagrees, the seriousness of the offense may be outweighed by the other factors discussed below. *United States v. Clymer*, 25 F.3d 824, 831 (9th Cir. 1994); *United States v. Bert*, 814 F.3d 70, 80 (2nd Cir. 2016); *United States v. Russo*, 741 F.2d 1264, 1267-1268 (11th Cir. 1984) (although the charged drug offenses were serious, the extensive postponement of several months of inexcusable delay as a result of the government's unintentional negligence resulted in a finding of dismissal with prejudice).

### 2.   Facts and Circumstances of this Case

This second statutory factor focuses on the Government's conduct and its impact on the delay. See *Bert*, *supra,* 814 F.3d at 80. Courts, for example, have granted dismissal with prejudice where the government has demonstrated: (1) a "lackadaisical attitude" (see *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990), citing, *Taylor*, *supra*, 487 U.S. at 338-339); (2) a "pattern of dilatory practices" or neglect (*ibid.*); (3) acted in bad faith (see *Hernandez*, *supra*, 863 F.2d 239, 244 (2nd Cir. 1988)); or (4) "other serious misconduct" (*United States v. Wells*, 893 F.2d 535, 539 (2d Cir. 1990)).

Therefore, even negligent, rather than intentional disregard of the accused's speedy trial rights, can support a dismissal with prejudice. See, e.g., *Russo, supra,* 741 F.2d at 1267-1268 ("mere lack of improper motive is not a sufficient excuse for a delay. Some affirmative justification must be demonstrated to warrant a dismissal without prejudice"); *Caparella, supra*, 716 F.2d at 980 (even negligent non-compliance weighs in favor dismissal with prejudice). But "where the delay in bringing the case to trial is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2016); see also *United States v. Doggett*, 505 U.S. 647, 655-658 (1992) (where the Government deliberately delays the prosecution in order to gain a tactical advantage at trial prejudice is assumed).

The delays caused by the Government's conduct in the present case demonstrate not only a pattern of neglect, but bad faith. The circumstances leading to the violation of the Speedy Trial Act in this case are not simply a mathematical miscalculation of time, nor a clerical mistake or typographical error or entry, but rather properly categorized as a deliberate disregard of speedy trial rights and an abdication of the Government's duties and responsibilities to comply with the Act. The Government used the ruse of plea negotiations leading defendant to believe a pre-plea dismissal of her case would be obtained then rescinded its offer. The Government predicated the ability to pursue the discussed global resolution, which would have included dismissal of Ms. Kuburovich's case, on defendants' agreeing to the trial continuance. There can be no doubt that the Government was aware of its duty to assure a speedy trial and Ms. Kuburovich's reluctance to agree to a continuance. She did so only because of assurances given that the Government would pursue these negotiations in good faith. Instead, however, her trial was delayed by almost six additional months only to learn months later the deal was worse than that which had been rejected before the continuance.

In addition to the Government's conduct, the length of delay should also be considered in evaluating this second factor. As the Ninth Circuit stated in *Clymer, supra,* 25 F.3d at 832:

[T]he Supreme Court has recognized, the length of the delay standing alone is a significant "measure of the seriousness of the speedy trial violation." *Taylor*, 487 U.S. at 340. Here, Clymer remained under the cloud of a pending indictment for 522 days - nearly one and a half years. Even giving the government the benefit of every doubt, about five months of this period was not excludable under the Act. ... even a delay of five months strongly implicates the serious concerns articulated by Justice White in his concurring opinion in *Barker v. Wingo*, 407 U.S. 514 (1972):

Inordinate delay between public charge and trial ... wholly aside from possible prejudice to the defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. *Id.* at 537 (White, J., concurring) (quoting *United States v. Marion*, 404 U.S. 307, 320, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971)).

In the present case, the delays between the alleged offense conduct and trial of ten years, and between the Indictment and trial two years, and non-excludable delay of nearly six months are inordinate, thus, further supporting a dismissal with prejudice.

Accordingly, application of the "facts and circumstances" not only weighs in favor of a dismissal with prejudice, but where supported by deliberate bad faith this remedy is required.

### 3.   Impact of Reprosecution on the Administration of the Speedy Trial Act and Administration of Justice

The rights at stake here touch the defendant's own personal liberty interest, as well as society's interest in the effective administration of justice. See *United States v. Saltzman*, 984 F.2d 1087, 1092-1093 (10th Cir. 1993); see also, *Russo, supra,* 741 F.2d at 1268 ("dismissal without prejudice can be viewed as frustrating the Act's mandate of swift prosecution since it would open the way to retrial after an even longer delay").

In *United States v. Godoy*, 821 F.2d 1498, 1506 (11th Cir. 1987), the Eleventh Circuit provided the following framework for analyzing this third factor:

In some ways, this third factor is a restatement of the other two ... The third factor makes clear the flexible, balancing approach required under § 3162(a).  In addition, it provides authority for considering such aggravating and mitigating factors as the length of the delay (fn omitted) and the prejudice to the defendant. In short, this third factor permits each side to submit any relevant consideration not covered by the other two statutory factors.

See also *Alvarez-Perez*, 629 F.3d at 1063 (Evidence "that the government intentionally delayed ... trial in order to harass [defendant] or otherwise acted in bad faith" should certainly be considered in evaluating this third statutory factor)

1    (citation omitted).

2        A dismissal with prejudice in this case will have an important impact on the

3    administration of justice in that it will reinforce the fact that speedy trial rights are of much

4    greater concern than convenience. The Government's manipulative and purposeful delay in

5    bringing this case to trial, not only in using false pretenses and bad faith to obtain the "ends of

6    justice" continuance and exclusion of time under *18 U.S.C. § 3161(h)(7)(A)*, but throughout

7    these proceedings and the effect of placing this young woman's life on hold for many years

8    must be taken into account. (See also, Argument § IV.A.4 ("Prejudice"), *infra.*) Allowing a re-

9    prosecution would not only severely impact defendant personally, but would also have a

10   negative impact on the public confidence in the fair administration of the criminal justice

11   system and not serve as a sufficient deterrent against future violations and manipulations of the

12   Speedy Trial Act.

13        **4.    Prejudice**[9]

14        The Speedy Trial Act is not a mere procedural device. By limiting the Government's

15   ability to drag out prosecutions, the statute curtails the severe effects that an ongoing

16   prosecution can have on the lives of individuals who are presumed innocent. Although a

17   defendant may not be held behind bars, their lives are seriously disrupted and the psychological

18   impact may be crippling.

19        As the Supreme Court has cautioned, even in the absence of pretrial incarceration delay

20   may prejudice a defendant by interfering with "liberty, whether ... free on bail or not" by

21   draining resources, causing defendants to lose their business or professional licenses, impair

22   their ability to find work or continue working, endanger their parental status, and suffer other

23   personal consequences, such as anxiety and stigma. See *Taylor*, 487 U.S. at 340.

24       As to the anxiety and stigma which inevitably attach to arrest and indictment,
         we must recognize that they exist despite the fact that a trial transcript or court
25       record will seldom reveal them. Nor can this form of prejudice be treated

26   _____

27       [9]  As mentioned above, a showing of prejudice is not a statutory factor or a prerequisite
     for a dismissal with prejudice for a violation of the Speedy Trial Act. *Taylor, supra*, 487 U.S. at
28   333-336. Nevertheless, it should be considered in the Court's analysis. *Ibid.*

lightly. As the Supreme Court pointedly observed in *United States v. Marion*, 404 U.S. 307 (1971) they are major evils protected against by the speedy trial guarantee.

*United States v. Macino*, 486 F.2d 750, 753 (7th Cir. 1973).

In *Doggett, supra*, the defendant was not incarcerated pretrial and was unable to make any affirmative showing that the delay weakened his defense or impaired his ability to produce specific testimony or specific items of evidence. The High Court noted consideration of prejudice is not limited to that which is specifically demonstrable:

. . . affirmative proof of particularized prejudice is not essential to every speedy trial claim. [citation.] *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'

*Doggett, supra,* 505 U.S. at 655.

For example, time erodes the evidence and can tilt the case against either side; thus, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Ibid.* When the government has been neglectful in concluding a criminal prosecution, it is an indication that there is an "uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it." *Ibid.*

As stated above, Ms. Kuburovich is facing charges for conduct alleged to have occurred ten years ago, and has endured years prosecutions, including two years in this case. While she has yet to be convicted of any of these offenses, she remains a prisoner to uncertainty and restrictions including conditions of supervised release. See, *Taylor, supra*, 487 U.S. at 340. Throughout these proceedings defense counsel has emphasized the anxiety the delays in Indicting this case and bringing it to trial have caused Ms. Kuburovich.[10] Following the continuance of the trial, defendant moved out of county and gave up her job, believing a settlement agreement had been reached wherein her case would be dismissed. It is difficult for

---

[10] See, e.g., Section II, *infra,* including counsel's email response to the Government's proposed stipulation to continue on  February 5, 2018, stating "I do not think my client will agree. We need to talk. I am not trying to be difficult but Tim [Lucey, former AUSA] knows the issues with my client and I worry the stress is going to have a sever impact on her well being."

1   her to look for work not knowing if the case will now be proceeding to trial. If this motion is

2   denied defendants will be required to incur the extra expense and stress of staying in the

3   vicinity of San Jose.

4          In addition to the personal prejudices suffered by defendant and her family, when

5   combined with the excessive pre-indictment delay, it may be presumed the delays also eroded

6   evidence and dimmed memories, compromising the reliability of the trial. On example is

7   evident in the report prepared by the Government memorializing the interview of attorney

8   Charles B. Greene, (See, *ftn* 6.)

9          These circumstances are all forms of prejudice unnecessarily exasperated by the

10  Government's failure to comply with its duties and responsibilities under the Speedy Trial Act,

11  thus the resulting prejudice caused by the delays in bringing this case to trial, although not

12  required to be shown, weighs in favor of a dismissal with prejudice.

13                                              ***

14         Accordingly, balancing and applying these factors respectfully requires a dismissal with

15  prejudice be granted.

16     **B.     Rule 48(b)(3) of the Federal Rules of Criminal Procedure**

17         In addition to the statutory rules discussed above, Rule 48(b)(3) of the Federal Rules of

18  Criminal procedure affords courts discretion to dismiss an indictment due to unnecessary delay

19  even where no violation of the Sixth Amendment or Speedy Trial Act violation has occurred.

20  See, *United States v. Hattrup,* 763 F.2d 376, 377 (9th Cir. 1985); *United States v. Watkins*, 339

21  F.3d 167, 180 (3rd Cir. 2003) (Nygard J., concurring); *United States v. Goodson,* 204 F.3d 508,

22  513-515 (4th Cir. 2000) (noting a court may dismiss charges under Rule 48(b) to "preserve the

23  integrity of the judicial process"); *United States v. De Luna,* 763 F.2d 897, 923 (8th Cir. 1985).

24  As stated, for example, in the Notes of the advisory Committee on 2002 amendments to Rule

25  48(b):

26         The Committee considered the relationship between Rule 48(b) and the Speedy
           Trial Act. See 18 U.S.C. §§ 3161, et seq. Rule 48(b), of course, operates
27         independently from the Act. See, e.g., *United States v. Goodson*, 204 F.3d 508
           (4th Cir. 2000) (noting purpose of Rule 48(b)); *United States v. Carlone*, 666

28

F.2d 1112, 1116 (7th Cir. 1981) (suggesting that Rule48(b) could provide an alternate basis in an extreme case to dismiss an indictment, without reference to Speedy Trial Act); *United States v. Balochi,* 527 F.2d 562, 563-64 (4th Cir. 1976) (per curiam) (Rule48(b) is broader in compass). In re-promulgating Rule48(b), the Committee intends no change in the relationship between that rule and the Speedy Trial Act.

The court may exercise discretion to dismiss under Rule 48(b) if it finds "demonstrable prejudice [to the defendant] or substantial threat thereof." *Goodson, supra,* 204 F.3d at 514-516; *Hattrup,* 763 F.2d at 378 (prosecutorial misconduct and actual or substantial prejudice required). "Prejudice" in this context, however, is not limited to the defendant's inability to defend the case, but includes those interests protected by the Sixth Amendment speedy trial, which includes the anxiety and concern of the accused. See *Goodson,* 204 F.3d at 515-516 (citations omitted).

As shown above, a dismissal with prejudice may be granted under Rule 48(b) even if the Court, assuming arguendo, does not find a violation of the Speedy Trial Act.

**C.    Alternatively, the Court May Order Specific Performance of the Plea Agreement.**

Assuming arguendo dismissal is not granted, the Court may exercise its authority to order specific performance of the Plea Agreement, thus, compelling the Office of the United States Attorney to adhere to the letter and spirit of those negotiations.

Plea bargains are contractual in nature and subject to contract-law standards. *Santobello v. New York*, 404 U.S. 257, 262-263 (1971); *United States v. Sandoval-Lopez*, 122 F.3d 797, 800 (9th Cir. 1997) (citation omitted). When the Government is in breach there are remedies available to the defendant including ordering specific performance of the agreement. *Ibid.*

Although there is a general rule that a plea agreement does not bind the parties until accepted by the court it is "subject to a detrimental reliance exception." *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992), *cert. denied,* 507 U.S. 997 (1993) ("Even if the agreement has not been finalized by the court, [a] defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding.") (citations and internal quotations omitted).

1   Understanding asking for an order of specific performance prior to the Court's

2   acceptance of a plea is rare, here it provides an alternative remedy to a dismissal with prejudice

3   warranted by the Government's conduct in this case. The Plea Agreement furnished on June

4   15, 2018 was accepted by Mr. Kuburovich, and the global resolution including a dismissal of

5   Ms. Kuburovich's at the time of his sentencing was also agreed to by her. It was not until July

6   31, 2018 that the Government advised the agreement was returned and a worse offer was made

7   than that prior to the continuance of the trial. As shown above, Ms. Kuburovich detrimentally

8   relied on a belief that the Government would negotiate in good faith by agreeing to a 6 month

9   continuance of her trial and believed an agreement had been reached which would include a

10  pre-plea dismissal of her case. Thus, should this Court not grant the motion to dismiss with

11  prejudice consideration of compelling specific performance is a possible alternative.

12  **V.**     **CONCLUSION**

13  Based on the foregoing, and in furtherance of the rights protected under the Speedy

14  Trial Act, defendant Kristel Kuburovich respectfully asks this Court to dismiss this case with

15  prejudice, or in the alternative, order specific performance.

16  Dated: August 13, 2018                    Respectfully submitted,

17

18                                           */s/ Zenia K. Gilg*
                                             ZENIA K. GILG
                                             Attorney for Defendant
19                                           KRISTEL KUBUROVICH

20

21

22

23

24

25

26

27

28

1

Certificate of Service

2        I hereby certify that on August 13, 2018, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which sent notification of such filing to all

4   attorneys of record, including:

5

    AUSA Scott Simeon
    AUSA Jeff Schenk
6       U.S. Attorney's Office
    NDCA, San Jose Branch
7       150 Almaden Blvd., Suite 900
    San Jose, CA 95113
8       Telephone: 408-535-5592
    Facsimile: 408-535-5066
9       Scott.Simeon@usdoj.gov
    jeffrey.b.schenk@usdoj.gov
10

    Law Office of J. David Nick
11      345 Franklin Street
    San Francisco, ca 94102
12      Telephone: (415) 552-4444
    Fax: (415) 358-5897
13      jdavidnick@lawyer.com

14

*/s/ Zenia K. Gilg*
15  ZENIA K. GILG
Cal. SBN 171922
16  Law Office of Zenia K. Gilg
Sausalito Plaza
17  1505 Bridgeway, Suite 103
Sausalito, CA 94965
18  Telephone:  415.324.7071
Facsimile:  415.324.7078
19  zenia@jacksonsquarelaw.com

20

21

22

23

24

25

26

27

28

Motion to Dismiss Memorandum Re: STA     25