ZENIA K. GILG, SBN 171922
Sausalito Plaza
1505 Bridgeway, Suite 103
Sausalito, CA 94965
Telephone:  415.324.7071
Facsimile:  415.324.7078
Email: zenia@jacksonsquarelaw.com

Attorney for Defendant
KRISTEL KUBUROVICH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  CR 16-00373-EJD |
| Plaintiff, | DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO MOTION FOR JUDGEMENT OF ACQUITTAL UNDER RULE 29(a) |
| v. | |
| GOYKO GUSTAV KUBUROVICH and KRISTEL KUBUROVICH, | Date:   October 9, 2018 Time:  1:30 p.m. Judge: Hon. Edward J. Davila |
| Defendants. | |
| _____ / | |

COMES NOW defendant Kristel Kuburovich, by and through counsel, and hereby

replies to the United States' Response to Defendants' Motion for Judgement of Acquittal made

after the Government closed its evidence, pursuant to Rule 29(a) of the Federal Rules of

Criminal Procedure (see ECF Doc. #120 and #120-1 (Defendants' Joint Motion and supporting

Memorandum, hereinafter referred to as Motion); and, ECF Doc. # 131 (United States'

Response, hereinafter referred to as "Opposition"); and, second motion for judgement of

acquittal made verbally after the close of all the evidence.[1]

---

[1] This Court reserved both of these motions under Rule 29(b).

Reply to U.S. Resp. to Mot. for Acquittal

I.      **INTRODUCTION**

At the outset and as detailed herein, conspicuously absent from the Government's Opposition is evidence bearing on the issue of Ms. Kuburovich's knowledge of her parents' bankruptcy case. As argued in defendants' moving papers and emphasized in this Reply, the Government failed to present *any* evidence, circumstantial or otherwise, from which it could be inferred Ms. Kuburovich had knowledge of the bankruptcy petition in advance of the completion of the alleged crime, let alone, of what assets were disclosed or omitted in the bankruptcy proceeding.[2]

Extensive research has turned up no case wherein sufficient evidence was found to support aiding and abetting the concealment of assets in a bankruptcy proceeding where a non-debtor third party did not know of and participate in the bankruptcy.

In fact, the case law demands knowledge and intent be supported by more than reasonable speculation or assumptions arising from relationships between the two defendants even when these defendants jointly file for bankruptcy and sign the relevant documents. (See, *United States v. McCormick*, 72 F.3d 1404 (9ᵗʰ Cir. 1995) (reversing defendant wife's conviction for *18 U.S.C. § 152* offense for insufficient evidence of specific intent to fraudulently conceal assets from the bankruptcy trustee, despite findings that the evidence "convincingly demonstrates" she was "fully informed of the scheme[;]" signed the petition, schedule and declarations; but, had not signed the specific schedule listing assets and claimed to not have read the documents); *United States v. White*, 879 F.2d 1509 (7th Cir. 1990) (reversing defendant wife's conviction for bankruptcy fraud, which had alleged she and her husband concealed assets, including her own life insurance policy, based on the government's failure to show she had read the bankruptcy forms before signing the petition and schedules under penalty of perjury).

Accordingly, on this basis alone the Court must enter a judgement of acquittal. Yet, the

---

[2] As will be discussed further below, the evidence identified in the Opposition has no tendency to establish these required elements. Thus, without knowledge, the Court need not even look to intent - which is also completely absent from the evidence.

1
2

defense need not rely on the failure to prove knowledge as there are additional grounds which defeat the charge as below indicated.

3
4
5
6
7
8

First, Ms. Kuburovich asks this Court to enter a judgement of acquittal based on the Government's failure to meet its burden to present sufficient evidence in its case-in-chief. Considering the evidence in the light most favorable to the Government and as a whole, under Rule 29(a), no rational trier of fact could have found the essential elements for concealment of assets in bankruptcy proceeding, charged in Count Two, pursuant to *18 U.S.C. § 152(1).* (See Doc. #120-1 at pp. 5-10; Section II.A., *infra*.)

9
10
11
12

Second, assuming arguendo this Court finds sufficient evidence of this crime, a judgement of acquittal should nevertheless be entered as to Ms. Kuburovich where proof of additional elements required to be shown for aiding and abetting are lacking. (See Doc. #120-1 at pp. 9-10; Section II.B., *infra*)

13
14
15

Finally, assuming arguendo, Ms. Kuburovich's motion is denied based on a review of the evidence presented in the Government's case-in-chief, consideration of the defense case supports granting judgement of acquittal. (See Section III, *infra*.)

16
17
18

**II.   NO RATIONAL TRIER OF FACT COULD CONCLUDE THE EVIDENCE PRESENTED IN THE GOVERNMENT'S CASE-IN-CHIEF SUFFICIENT TO PROVE KRISTEL KUBUROVICH AIDED AND ABETTED CONCEALMENT OF ASSETS IN A BANKRUPTCY PROCEEDING BEYOND A REASONABLE DOUBT.**

19
20
21

In reviewing the Government's evidence presented in their case-in-chief in light most favorable to the prosecution, this Court should hold no rational juror could find the evidence sufficient to support a conviction for Count Two.

22

**A.   Concealment of Assets in a Bankruptcy Proceeding**

23
24
25

An acquittal should be entered for Count Two, "Concealment of Assets in a Bankruptcy Proceeding" (*Title 18 U.S.C. § 152(1)*), since the Government failed to present sufficient evidence proving each of the required elements, including:

26

1.   Knowingly and fraudulently concealed property from the custodian of the bankruptcy court or the bankruptcy trustee.

27
28

A person "fraudulently conceals" property of the estate of a debtor when that person knowingly withholds information or property or knowingly acts for the

1

purpose of preventing the discovery of such property intending to deceive or to cheat a creditor, a trustee, or a bankruptcy judge.[3]

2

    2.      The property concealed belonged to the estate of the debtor.

3

4

5

6

The term "estate of a debtor" means all rights, title, share, or interests, whether legal or equitable, in property of a debtor at the time a bankruptcy petition is filed, wherever located and by whomever held. The term "estate of a debtor" may also be used to mean property acquired after the commencement of the proceeding and, under some circumstances, may include interests in property of a debtor within one year before the date of the filing of the petition.

7

(See Final Jury Instructions, Doc. # 127, at pp. 19-20.[4])

8

    It is undisputed that a person, such as Kristel Kuburovich, may not be convicted for

9

aiding and abetting another's commission of a crime if the Government fails to prove beyond a

10

reasonable doubt that the crime was in fact committed. See, e.g., *United States v. Mann*, 811

11

F.2d 495, 497- 498 (9th Cir. 1987). Defendant maintains there was insufficient evidence to

12

support a finding that (1) Goyko Kuburovich, the principal, retained any legal or equitable

13

interest in assets after the transfer to his daughters was made in December of 2008, (2) the

14

transfer was made in contemplation of bankruptcy proceedings and (3) that he was required to

15

list these assets in his petition filed 18 months later. Thus, there was no fraudulent

16

concealment, much less a specific intent to defraud. For example, even the Government's own

17

witness, Mr. Kuburovich's bankruptcy attorney Charles Greene, testified that while he had no

18

independent recollection of his specific discussion with Mr. Kuburovich, based on his practice

19

and experience he did not believe he would have advised disclosure of the assets in question.

20

---

21

22

23

24

    [3] Defendant requested the jury instructions should have been modified to add what the law requires: That is, "there can be no fraudulent concealment of assets where all interest is transferred to a third party before the bankruptcy filing unless it is shown that the transfer was merely a temporary expedient to place the property beyond the reach of the trustee, the title to be resumed by the debtor as soon as prudence will permit." (See Doc. # 123-1 at pp. 6-7, citing, *In re Hammerstein*, 189 F. 37 (2nd Cir. 1911).)

25

26

27

28

    [4] It is important to note that there is no Ninth Circuit Model Jury Instruction for concealment of assets in bankruptcy proceedings. As such, the court agreed to give a slightly modified version of the Government's proposed instruction "Based on the Jury Instruction Nos. 25 to 31 Given by the Court in *United States v. Vandevort*, No. 2:08-CR-1070-PSG, Docket No. 127 (C.D. Cal. July 14, 2010)." (See Doc. # 122 at p. 5-6.) Since this instruction is not based on established Ninth Circuit precedent, the case law cited provides clarification of the elements required to be proved as a principal and aider and abettor for this particular offense.

For the reasons presented in defendants' Joint Motion and to be further argued at the hearing, a rational trier of fact would not find the essential elements of the crime charged in Count Two beyond a reasonable doubt, and as such, the Court should enter acquittals of both defendants.

**B.      Aiding and Abetting**

Assuming arguendo, this Court finds sufficiency of the evidence as to Goyko Kuburovich, the evidence presented in the Government's case-in-chief fails to establish a rational trier of fact could find beyond a reasonable doubt the additional elements proving aiding and abetting, pursuant to *18 U.S.C. § 2*, as required under the relevant jury instructions:

1.   Defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of concealment of assets in a bankruptcy proceeding.

A person knowingly and fraudulently conceals property of the estate of a debtor when that person knowingly withholds information or property or knowingly acts for the purpose of preventing the discovery of such property intending to deceive or to cheat a creditor, a trustee, or a bankruptcy judge.[5]

2.   She acted with the intent to facilitate concealment of assets in a bankruptcy proceeding.[6]

• A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with *advance knowledge of the crime*.

• It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. *The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime of concealment of assets in a bankruptcy proceeding.*

---

[5] See Final Jury Instructions, Doc. # 127, at pp. 19-20 (requiring the knowing and fraudulent concealment of property from the custodian of the bankruptcy court or the bankruptcy trustee).

[6] The Government's Opposition agrees it must present sufficient evidence to establish: "*Ms. Kuburovich's intent to facilitate* Mr. Kuburovich's 'knowing[] and fraudulent[] conceal[ment] *from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee*, any property belonging to [his] estate." (See Opposition, Doc. #131, at 6:19-23, citing *18 U.S.C. § 152(1)*.)

1

2

3. She acted before the crime was completed.

(See Final Jury Instructions, Doc. # 127, at pp. 19-20; and Ninth Circuit Model Jury Instruction 5.1 (emphasis added).)

Moreover, if, "there is an issue as to when the defendant learned of a particular circumstance that constitutes an element of the crime, ... the defendant must have learned of the circumstance at a time when the defendant still had a realistic opportunity to withdraw from the crime. See Ninth Circuit Model Jury Instruction 5.1 ("Aiding and Abetting"), Comment, citing *Rosemond v. United States*, 134 S. Ct. 1240, 1251-1252 & n.10 (2014).

As the Ninth Circuit has held: "Aiding and abetting the commission of a specific crime includes four elements: (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent to commit the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that the principal committed the underlying offense." *United States v. Hernandez-Oellana,* 539 F.3d 994, 1006-1007 (9th Cir. 2008). Therefore, a judgement of acquittal must be entered for a defendant convicted of aiding and abetting a substantive offense if the court finds "any rational juror would have had at the least a reasonable doubt as to whether [defendant] knowingly and intentionally aided, counseled, commanded, induced or procured [the principal] to commit" [concealment of assets in connection with a case brought under Title 11]. *Id.* at 1004.

"Although circumstantial evidence alone can support a conviction, there are times that it amounts to only reasonable speculation and not to sufficient evidence." *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008). That is, "suspicion or speculation does not rise to the level of sufficient evidence." *Hernandez-Oellana,* 539 F.3d at 1004; see also, *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990) (citation omitted); *United States v. Lopez*, 484 F.3d 1186, 1200 (9th Cir. 2007).

The Government concedes there is no direct evidence of Ms. Kuburovich's intent to facilitate the knowing and fraudulent concealment of assets in her father's bankruptcy case. (See, e.g., Opposition, Doc. # 131, at p. 6.) Although defendant does not dispute general

propositions presented in the case law cited in the Opposition regarding circumstantial

evidence, it is important to emphasize the Ninth Circuit's standard, based on United States

Supreme Court precedent, as articulated in a case cited by both parties, *United States v. Nevils*,

598 F.3d 1158, 1167 (9th Cir. 2010):

> [W]e acknowledge our obligation under *Jackson* to identify those rare occasions in
> which 'a properly instructed jury may . . . convict even when it can be said that no
> rational trier of fact could find guilt beyond a reasonable doubt[.]' *Jackson*, 443 U.S. at
> 317. Although *Jackson* requires the reviewing court initially to construe all evidence in
> the favor of the government, the evidence so construed may still be so supportive of
> innocence that no rational juror could conclude that the government proved its case
> beyond a reasonable doubt. Moreover, the evidence construed in favor of the
> government may be insufficient to establish every element of the crime. We have held,
> for example, that evidence is insufficient to support a verdict where mere speculation,
> rather than reasonable inference, supports the government's case, see *Juan H. v. Allen*,
> 408 F.3d 1262, 1277-79 (9th Cir. 2005), or where there is a "total failure of proof of [a]
> requisite" element, *Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009). Further,
> we have long held that evidence of mere proximity ..., or association with a person ... ,
> is insufficient standing alone to support a finding of [guilt]. See *United States v.
> Chambers*, 918 F.2d 1455, 1459 (9th Cir. 1990); see also *Arellanes v. United States*,
> 302 F.2d 603, 606 (9th Cir. 1962).

In the present case, no facts were shown nor can reasonable inferences be made from

the circumstantial evidence presented in the Government's case-in-chief required to establish

beyond a reasonable doubt that Kristel Kuburovich acted with the knowledge and intention of

helping her father commit the crime of concealment of assets in his bankruptcy proceeding. In

fact, there was a total lack of evidence to establish that she even knew her parents filed for

bankruptcy, let alone of his omission of any of the assets she held in her name.

Not a single Government witness nor exhibit introduced revealed any evidence

whatsoever that she knew of her father's bankruptcy, prepared or signed any documents related

thereto, her presence at any meeting or appearance where the bankruptcy was discussed, nor

any other facts to support such a finding. Although the Government argues the fact finder may

infer from the circumstantial evidence presented that she was aware of a foreclosure, lawsuits,

debts and her parents' financial problems, as shown further below, even this inference cannot

be drawn from the evidence. Yet, more importantly, none of this evidence supports a finding

that she had knowledge of the bankruptcy petition, let alone what was contained in that petition

and related documents. This total failure of proof requires Ms. Kuburovich's acquittal. (See,

discussion of *United States v. McCormick*, 72 F.3d 1404, 1409-1411 (9th Cir. 1995) and *United States v. White*, 879 F.2d 1509 (7th Cir. 1990), *infra*.)

Although the Government advances numerous cases in support of general propositions, they fail to cite a single case discussing evidence needed to establish elements required for aiding an abetting the concealment of assets in a bankruptcy proceeding. (See Opposition at 6, citing, *United States v. Pelisamen*, 641 F.3d 399 (9th Cir. 2011);[7] *Lopez, supra*, 484 F.3d 1186;[8] *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008);[9] *United States v. Selby,* 557 F.3d

---

[7] The *Pelisamen* court considered whether there was sufficient circumstantial evidence of intent to commit wire fraud and conspiracy to deny defendant a new trial. *Ibid.* Other than for general principles, this case has no relevance to the case at hand where a conspiracy requires less proof and is broader than aiding and abetting. See, e.g., *Hernandez-Oellana, supra,* 539 F.3d at 1003.

[8] Although *Lopez, supra,* involved alien smuggling case, not bankruptcy, the Ninth Circuit's reversal of a conviction for insufficient evidence of aiding and abetting provides support for defendant's position, rather than the Government's, in the present case. 484 F.3d at 1188. "[A]iding and abetting has four elements including, as most relevant here, that the accused had the specific intent to facilitate the commission of a crime by another and that the accused assisted or participated in the commission of the underlying substantive offense." *Id.* at 1199 (internal quotations and citation omitted). "Specifically, it must show that the ... offense was something that [defendant] had the specific intent to bring about [citations omitted], and that she knowingly and intentionally commanded, counseled, or encouraged the initial transporter to commit the 'brings to' offense." *Id.* at 1200 (emphasis added). In applying these elements, the court found insufficient evidence of the intent necessary to prove aiding and abetting, including "defendant [who picked up the aliens after they were transported across the border] knowingly and intentionally commanded, counseled, or encouraged the initial transporter to commit the 'brings to' offense." *Ibid.* "We hold that, viewing the evidence in the light most favorable to the government, any rational juror would have had at the least a reasonable doubt as to whether Lopez 'knowingly and intentionally aided, counseled, commanded, induced or procured [the principal] to commit each element' of the 'brings to' offense." *Ibid.* The Government's suspicious and speculative inferences drawn from a long list of circumstantial evidence failed to satisfy its burden. *Id.* at 1200-1201 ("mere suspicion or speculation does not rise to the level of sufficient evidence").

[9] Like, *Pelisamen, supra,* the *Sullivan* the court was asked to review the sufficiency of the evidence as principles charged with substantive and conspiracy offenses, not aiding and abetting. (See fn 7, *supra*.) Moreover, although the court found evidence sufficient for concealment of assets from the bankruptcy trustee, one defendant was the attorney representing a business in bankruptcy proceedings for which assets were not disclosed that had been fraudulently transferred into his client-trust account, and the other two defendants were officers of the business in the involuntary bankruptcy proceeding, who strategized with bankruptcy counsel, submitted sworn declarations and testimony in connection therewith. *Id.* at 976-977.

968, 978 (9th Cir. 2008) (not involving bankruptcy or aiding and abetting charges); *United States v. Bucher,* 375 F.3d 929, 934 (9th Cir. 2004) (same).

After exhaustive research it appears that in the history of this Country and our jurisprudence there has *never* been a published federal case supporting the prosecution, let alone a conviction, of a third party for aiding and abetting the concealment of assets in a bankruptcy case in which the defendant was not a party or active participant in the bankruptcy proceedings. Indeed, the case law reveals that even co-petitioners are not automatically assumed to have knowledge about the documents bearing their own signature, nor share the intent to fraudulently conceal assets even if fully informed of the scheme to do so.

In *McCormick, supra*, 72 F.3d at1409-1410, while affirming defendant husband's convictions, which included a violation of *18 U.S.C. § 152*, the Ninth Circuit reversed co-defendant and co-petitioner wife's conviction for bankruptcy fraud since there was no evidence of a specific intent to fraudulently conceal assets from the bankruptcy trustee. Although the "evidence convincingly demonstrates" the wife was "fully informed of the scheme ... [t]he crime for which she stands convicted, however, requires evidence of her specific intent to fraudulently conceal assets from the bankruptcy trustee." *Ibid.* (citation omitted). Even though defendant wife knew of the scheme and signed the petition and declarations, since she did not also sign the specific schedules listing assets and said she did not read the bankruptcy documents before signing them, despite the bankruptcy attorney's testimony it was her practice to have her staff go over the petition and schedules with clients before signing, the court found the evidence was lacking and reversed her conviction. *Id.* at 1410 . In so holding, the Ninth Circuit noted:

> The trial judge's comments at sentencing make it clear that in his view the evidence against Tracy was insufficient to support her conviction. Although this comment does not take the place of evidence in the case, it is entitled to some deference. The trial judge watched the witnesses as they testified and was able to evaluate the evidence in a way a court of appeals never can. At the close of the prosecution's case, and again at the

---

As discussed further below, this case is distinguishable in that not only is Kristel Kuburovich not charged as a principle or co-conspirator, but the Government failed to show any participation in or knowledge of her father's bankruptcy case.

close of the defense case, defense counsel moved pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal as to both defendants. The court denied both motions. The defense did not renew its motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29( c) after the verdict was returned. At sentencing several months later, the trial court stated upon further reflection that it would have granted a Rule 29 ( c) post-verdict motion for judgment of acquittal in favor of Tracy McCormick had such a motion been made.

*Id.* at 1410-1411.

Accordingly, the court held:

In view of all of the foregoing, and even viewing the evidence in the light most favorable to the prosecution, the evidence is insufficient to prove beyond a reasonable doubt that Tracy L. McCormick committed bankruptcy fraud in violation of 18 U.S.C. § 152. We therefore reverse her conviction.

*Id.* at 1411.

In *White, supra,* 879 F.2d 1509, relied upon heavily in *McCormick, supra,* the court similarly reversed a wife's conviction for bankruptcy fraud even though she personally signed documents under penalty of perjury. Mr. White, an experienced businessman who handled all the financial affairs of his household, met with bankruptcy counsel to prepare both the corporation's and the personal bankruptcy petitions. *Id.* at 1511. The charge of bankruptcy fraud against the Whites alleged that they had concealed several assets in their bankruptcy schedules. *Ibid.* The court found the circumstances enable the necessary inference of knowledge on the part of Mr. White was sufficient to support his conviction. *Id.* at 1515. With regards to Mrs. White, however, the evidence against her was found insufficient even though her signature was included on several pages of the bankruptcy petition and accompanying schedules. *Id.* at 1511, 1515. In fact, one of the assets Mrs. White was accused of concealing was her own life insurance policy. Still the court commented "this suggests only that if she had read the petition she might have noticed an omission." *Id.* at 1511.

In the present case, evidence was wholly lacking to show Kristel Kuburovich had any knowledge of her father's plan to file for bankruptcy a year and a half after receiving the asset at issue and at the age of 19. Further, no evidence was presented demonstrating that Ms. Kuburovich knew of the bankruptcy filing or its contents at anytime in advance of the completion of the alleged crime. Therefore, there is insufficient circumstantial evidence

presented in the Government's case-in-chief, even when construed in light most favorable to

the prosecution, for any reasonable inferences to be made and a rational jury to find: (1) Kristel

aided, counseled, commanded, induced or procured that her father, Goyko Kuburovich, with

respect to at least one element of concealment of assets in a bankruptcy proceeding, including,

the knowing and fraudulent concealment of property of the estate of a debtor with the intent to

deceive or to cheat the bankruptcy court, trustee or creditor; and (2) she acted with the intent to

facilitate concealment of assets in a bankruptcy proceeding by actively participating in a

criminal venture with advance knowledge of the crime. Accordingly, like the wives in

*McCormick* and *White,* the evidence fails to support the conviction.

Moreover, the facts identified in the Opposition from which the Government asks this

Court to infer Ms. Kuburovich's guilt do nothing to support a finding of knowledge and intent

as defined above. Specifically, the prosecution asserts the following circumstantial evidence

supports the charge:

(1)     The scheme itself which continued for almost seven years (Opposition at 6:23-
24; 7:3-18).

Here, the Government argues the trip to Lichtenstein and Kristel's omission of that

portion of the trip from her blog, the video taped evidence of her custodial interrogation and the

further evidence listed and addressed below support a scheme to defraud. As the Ninth Circuit

has held, evidence of a scheme to defraud is insufficient to support the requisite specific intent

required to support concealment of assets from a bankruptcy proceeding. See *McCormick,*

*supra*, 72 F.3d at1409-1410 (despite "evidence convincingly demonstrates" the wife was "fully

informed of the scheme," the court reversed her conviction).

With regards to Kristel's blog, the notion that the 19 year old girl who wrote that blog

did so with the knowledge that her father would be filing for bankrutpcy a year and a half into

the future, and that she purposely left out her visit to the bank in order to conceal the fact that

she was opening an account which would later be used to conceal assets from the bankruptcy

court a year and a half later is specious. Such an advanced planner and sophisticated thinker

would surely also try to conceal the asset by not directly wiring it from an account in her own

name.

As to Ms. Kuburovich's custodial statements, the video supports a conclusion that she was not seeking to conceal the Eagle Ridge Property from the bankruptcy court since had that been her intent she would have stated the home belonged to Nata, not "I don't know." Further, the shaking of her head in response to questions regarding foreign bank accounts lends little to a finding that she intended to conceal these accounts since the officer states they already knew about the accounts. Further, the officer was in no way related to the bankruptcy court as the evidence clearly provided that he was questioning Ms. Kuburovich regarding a separate investigation.

(2)     Codefendants' close family ties (Opposition page 6:24-25; 7:19-8:7).

If the Ninth Circuit has held that a wife's signature on bankruptcy documents for which she is a co-petitioner is insufficient to establish knowledge and intent, the fact that Ms. Kuburovich was living under the same roof as her parents for seven years and may have been aware of their financial troubles certainly should not suffice. See *McCormick, supra*, 72 F.3d at 1409-1410.

(3)     Frequent and significant financial transactions involving both defendants' financial accounts, including accounts of businesses listed in the bankruptcy filings (Opposition at 6:25-26; 8:12-10:10).

Evidence regarding the transfer of funds from Ms. Kuburovich's account and that of Nata to MediLeaf and/or Cornerstone (entities listed in Mr. Kuburovich's bankruptcy filings) contradicts the inference the Government is seeking to draw. For if defendant had the intent to conceal the assets it would be unlikely she would move funds from an account *not* known to the bankruptcy court into one which *is* known to the bankruptcy court.

During the relevant two year period, Ms. Kuburovich had control over five accounts, each of which are discussed specifically below, revealing further evidence that does not support, but in fact defeats the Government's theory.

The following three were held in her name:

1.    VP account xxxx014, opened January 5, 2009, closed March 14, 2013 (Bates 24961) Ex. 58-206, *Schedule 9*

Minimal transactions and the evidence does not establish who engaged in these transactions since Mr. Kuburovich was also a signer on the account.

2.    USB account xxxx0823, opened on December 6, 2008 closed on May 23, 2011 (Bates 23799) Ex 58-79 *Schedule 7*

Fourteen transactions includes service charges and was closed one year after the bankruptcy filing.

3.    Pinnacle Bank account xxxx0569, opened on December 6, 2008 closed on June 14, 2010 Ex 33-2 and Ex. 58-81, *Schedule 8*

Forty-one transactions spread over the course of one and a half years. In May and June there are 10 transactions. Two significant transfers are from Nata into her personal account and then significant disbursements made to MediLeaf. Again, these transactions actually defeat the Government's case rather than assist, for if Ms. Kuburovich was engaging in transactions designed to conceal funds from the bankruptcy court, why would she transfer money from accounts under whose name there is no record of in the Bankruptcy filings into accounts under the name of an entity which is named in Mr. Kuburovich's bankruptcy filings (i.e., MediLeaf) (See Ex. 58-83.)

The two listed below were held in the name of Nata LP and Destro LLC, respectively:

4.    Pinnacle Bank, Nata LP account xxxx1277, opened 2.12.09 closed on June 14, 2010 *Schedule 10* Ex. 58-84-58-89

Other than the wire transfers from Old Republic Title and subsequent transfer to Kristel Kuburovich's account and then to MediLeaf, the activity in this account does not show a pattern of hiding funds. Again, the money tends to go from accounts not connected to entities named in the bankruptcy proceeding into accounts of entities which are so named (i.e. MediLeaf).

5.    Pinnacle Bank, Destro account xxxx1269 opened February 12, 2009 closed November 30, 2009 Ex. 38.

This account was not included in the Schedules, Exhibit 58, and the account had a

balance of $100 throughout its existence.

Contrary to the Government's representations the transactions between accounts is not evidence supporting the charge of intent to conceal, but rather demonstrates the opposite. In fact, there are not even two reasonable interpretations of this evidence. It simply makes no sense that in an effort to conceal assets the defendants moved money from accounts to which the debtor had no legal title, nor any apparent connection presented in the bankruptcy petition, into an account of an entity for which he was the president, had full control over banking arrangements, and was named in the petition. The same is true for the Cornerstone LLC.[10]

    (4)    Suspicious timing of large transfers between and withdrawals from Ms. Kuburovich's bank accounts on the day of and in the days preceding the bankruptcy filing, and her closing of those accounts almost immediately after the bankruptcy filing (Opposition at 6:26-7:1; 8:20-9:25).

First, while there is a transfer of $14,000 from the Nata account to Kristel's personal account (both at Pinnacle Bank), and a transfer of $15,000 on that same day to the Pinnacle MediLeaf Account, this demonstrates a desire to trace funds rather than obfuscate. Further, there is no reasonable inference which can be drawn from these facts which would support the charge. Again, how is it that transfering funds from an account not named in the bankruptcy filings to one that is demonstrates an intent to conceal? Furthermore, these actions do not in any way support a finding that Ms. Kuburovich knew that her father was filing for bankruptcy. Finally, the accounts were not closed almost immediately following the bankruptcy filing. In fact, the USB account was closed on May 23, 2011, VP on March 14, 2013, and while the Pinnacle Bank accounts were closed in June of 2010, as demonstrated in Ex. 33-3 and 33-5, at least one reason given was "unhappy with bank."

    (5)    Payment of Mr. Kuburovich's debts from Ms. Kuburovich's Liechtenstein bank account (Opposition at 7:1-2; 11:15-23).

The Government incorrectly asserts that the "only debts in evidence are those that are

---

[10]  While not really relevant, the Government's characterization of what the transactions in early May as a "flurry of financial activity" is inaccurate. (Opposition at 10:11-12.) While there was significant activity relating to the Warda and Font loans, both of which were easily traced to MediLeaf.

listed in his bankruptcy filing." (Opposition at 11:18-19.) As the prosecutor's presented and argued that the loan from Warda and Font were for Mr. Kuburovich's business and the evidence demonstrates that this is the only debt to which Ms. Kuburovich was privy. The Government failed completely to establish that Ms. Kuburovich had knowledge of any of the debts listed in the bankruptcy filings, or for that matter, that there even were such filings. While it may seem inconceivable to them that Ms. Kuburovich did not know, this opinion is not evidence and no inference can be drawn from the prosecutor's opinion. In addition, the Government presented evidence that Mr. Kuburovich was a signer on the VP account and had power of attorney, and in so doing failed to present any evidence regarding Ms. Kuburovich's involvement or even knowledge of that transfer. Be that as it may, even assuming arguendo Ms. Kuburovich had knowledge of the debts and even that these debts were part of a bankruptcy case filed by her parents, this does nothing to support the notion that she had been concealing the money in order to hide it from the bankruptcy court or trustee, in fact such evidence would support the opposite conclusion (i.e., she was producing the assets to the bankruptcy court).

    (6)    Intent may be inferred from a defendant's misrepresentations re Destro Operating Agreement (Opposition at 10:24-11:4).

First, the Government must prove there was a misrepresentation which is here questionable considering the Operating Agreement was prepared and signed in late 2008, and the only investment made was in property. Second, the Government fails to demonstrate how this document proves Ms. Kuburovich knew about the bankruptcy filing or what was presented to the bankruptcy court.

    (7)    The June 21, 2011 amendment to the Statement of Financial Affairs which discloses a transfer of 1/8 interest in property to Kristel Kuburovich in exchange for loan forgiveness (Opposition at 11:7-10).

This evidence does nothing to support the necessary element of Ms. Kuburovich's knowledge of the bankruptcy filing, let alone provide any inference regarding her intent to conceal property from the bankruptcy court. If the wife in *White, supra,* cannot be found to have knowledge of her own life insurance policy omitted from the Petition she signed under

1    oath, Ms. Kuburovich cannot be found to have known about this amendment - which if known

2    still lends no support to the Government's case.

3         Accordingly, even when viewed as a whole, in light most favorable to the Government,

4    the specific circumstantial evidence relied upon fails to demonstrate rational jurors could find

5    defendant guilty beyond a reasonable doubt. Suspicious and speculative inferences drawn from

6    a long list of circumstantial evidence does not satisfy the Government's burden. See, *Lopez,*

7    *supra,* 484 F.3d at 1200.

8         In addition to the case law presented above demonstrating that a judgement of acquittal

9    must be entered under the circumstances present in this case, the following additional cases

10   also provide support for finding insufficiency of the evidence to hold Ms. Kuburovich

11   criminally liable for aiding and abetting the concealment of assets in a bankruptcy proceeding

12   under *I18 U.S.C. §§ 152* and *2*:

13   1.   *United States v. Knight*, 800 F.3d 491, 505-511(8th Cir. 2015) (Knight was
          Barber's bankruptcy attorney. Barber used Knight's trust account to conceal
14        money from bankruptcy court and creditors. Neither disclosed the large sums of
          money that had passed through Knight's trust account in the year before the
15        bankruptcy filing. District court denied a Rule 29 motion, but granted a Rule 33
          new trial motion based on insufficiency of the evidence. The evidence as to the
16        extent of Knight's knowledge of and involvement in Barber's schemes was
          largely speculative and based generally on the fact that Knight was Barber's
17        lawyer. Inference could be made that Barber and Knight took certain actions
          with the view Barber would be filing for bankruptcy. Although the evidence
18        presented was sufficient, by a thin margin, to support Knight's conviction as to
          Count 1, the court found that the evidence weighs heavily enough against the
19        verdict that a miscarriage of justice may have occurred).

20   2.   *United States v. Guiliano*, 644 F.2d 85, 87-88 (2nd Cir. 1981) (In reversing
          defendant's conviction for aiding and abetting bankruptcy fraud in violation *§
21        152* and construing the evidence in light most favorably to the Government, the
          court found that although the evidence established cash receipts apparently
22        embezzled by defendant were never disclosed to the bankruptcy trustee, the
          evidence was nevertheless insufficient to convict him of the offense of
23        knowingly and fraudulently concealing the cash from the trustee. The
          government had failed to establish that he had done so knowing of the
24        appointment of the trustee and with the intent to defraud creditors. That is, there
          was no direct evidence nor evidence from which defendant's knowledge could
25        be reasonably inferred to show that he knew of the bankruptcy or appointment
          of trustee even though the Government referred to some facts bearing on
26        Guiliano's knowledge of the appointment the trustee, but failed to justify the
          jury's finding that he "knew of the appointment" of the trustee. " In the absence
27        of such evidence, a finding that the defendant somehow learned of the
          appointment of the trustee could only be arrived at through conjecture.").

28

3.  *United States v. Alper*, 156 F.2d 222, 223-224 (2nd Cir. 1946) (Defendant Alper's conviction under a predecessor statute of *18 U.S.C. § 152(1)*, which criminalizes the knowing and fraudulent concealment of property belonging to a bankrupt estate, was reversed. The bankruptcy debtor was in default under notes held by defendant testified for the prosecution. Alper had suggested the debtor buy large amounts of liquor on credit, use some of that liquor to satisfy the outstanding indebtedness to him, then file for bankruptcy, and thus, the evidence was sufficient to establish he "knew that trustee had been appointed." Under these facts, "not only did the accused know of the bankruptcy, but himself suggested it, telling Chernow that after he (Alper) had been satisfied out of the liquor the bankrupt was to purchase, he would turn back the rest. This clearly justified the inference that he expected the bankrupt to keep it from his trustee, if one should be appointed, and in any event from his creditors." Despite these findings, the court reversed Alper's conviction, holding the cases of liquor he received, to the extent that they were in payment of a debt, constituted a preference but not a concealment of assets, despite that "it seems unlikely that [the jury] would have found that the accused took only enough to satisfy the debt[.]"

4.  *Snyder v. United States*, 448 F.2d 716, 718 (8th Cir. 1971) ("By far the most important element [for aiding and abetting] is the sharing of the criminal intent of the principal, and this is concededly difficult to prove; nevertheless, the Government must prove this sharing of criminal intent." *Id.* (citation omitted). Applying this requirement, the court  reversed defendants' convictions for aiding and abetting the embezzlement and misapplication of bank funds finding there was "no evidence that [the defendants] either knew or must have known that the bank's funds were being embezzled and that they were receiving the proceeds." *Id.* at 719. The court concluded that the defendants' "conduct might be viewed as naive and perhaps reckless but it does not appear to be criminal." *Ibid.* (citations omitted).

5.  *United States v. Persfull*, 660 F.3d 286, 289-295 (7th Cir. 2011) (The same day that defendant one discharged his debts in a Chapter 7 bankruptcy, his mother died, leaving defendant one and his brother, defendant two, equal shares in the estate. Defendant one signed a disclaimer of his interest, but never told the trustee about his inheritance. Throughout their trial, neither defendant disputed the post-bankruptcy financial transactions that led to defendant one's possession of portions of the inheritance. Inter alia, the appellate court held that, it was not abuse of discretion to deny the motions for a new trial. Defendant one was charged and convicted of bankruptcy fraud, concealment and obstruction; however, defendant two only of bankruptcy fraud and making a false statement, not concealment. Circumstantial evidence established that defendant two knew defendant one was keeping his inheritance from the bankruptcy trustee, including: (1) Defendant one testified that he asked an attorney, in defendant two's presence, whether he could keep his inheritance out of the estate, and that the attorney indicated a disclaimer would fulfill that goal; (2) defendant two had written a letter with the disclaimer of inheritance form indicating his brother, defendant one, was in bankruptcy; and (3) defendant two failed to respond to inquiries by the bankruptcy trustee after being threatened with legal action. Thus, the brothers knew of the disclaimer, used it inconsistently, and concealed assets from the estate. The concealment evidence also established that defendant one knew he was required to disclose an inheritance and used the money as his own irrespective of the disclaimer).

6.   *United States v. Webster,* 125 F.3d 1024 (7th Cir. 1997) (The court affirmed the conviction for fraudulent concealment of a debtor's property from a bankruptcy trustee based on finding sufficient evidence from which the jury could have convicted defendant of aiding and abetting in the concealment of debtor's ownership in a bar. Defendant was both the debtor's attorney, assisting him in incorporating the ownership of his bar and in filing for Chapter 7 bankruptcy, including, but not limited to, drafting the Statement of Financial Affairs. Nowhere was it mentioned that "on the eve of the bankruptcy, the Bar actually had been incorporated" and Deiss continued to manage, operate and own the Bar; instead Webster told the trustee this was a no asset case. *Ibid.* Deiss admitted the bankruptcy filings contained false statements, cooperated with the government, and testified at trial that it was Webster who had suggested he file bankruptcy and decided how the Bar would be reflected on the bankruptcy documents).

Accordingly, based on consideration of only the evidence presented in the Government's case-in-chief, a judgement of acquittal for Count Two should be entered for both defendants, but even if not for Mr. Kuburovich then for his daughter Kristel, where the record contains insufficient evidence upon which a rational jury could rely to find her guilty of aiding and abetting in the concealment of property of the bankruptcy estate under *18 U.S.C.S. §§ 152* and *2*.

## III.   CONSIDERATION OF THE ADDITIONAL EVIDENCE INTRODUCED IN THE DEFENSE'S CASE SUPPORTS GRANTING HER SECOND RULE 29(a) MOTION.

Following the close of all the evidence, defendants' made a second motion for judgement of acquittal, pursuant to Rule 29(a). Assuming arguendo, this Court denies defendant's first motion, based only on the evidence presented in the government's case-in-chief, upon considering all the evidence including the additional evidence and testimony introduced in the defendants' case supports an acquittal. Attorney Shaw Parr testified on behalf of the defense that he had received two subpoenas for documents on behalf of Nata, LP and Destro, from the lawyer for the Trustee for return to the Bankruptcy court. As there was no evidence Kristel Kuburovich, as a managing member for these entities, tried to avoid responding to these subpoenas or did anything to attempt to withhold any information from the ankruptcy court, this additional evidence lends further support for a finding that she could not have intended to conceal assets.

IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, as well as those to be further presented at the hearing, defendant Kristel Kuburovich respectfully requests this Court grant her Motion and enter a judgement of acquittal on Count Two, pursuant to Rule 29(a), first, based on the evidence presented in the Government's case-in-chief; and second, only if denied, based on all the evidence.

Dated: October 4, 2018

/s/ *Zenia K. Gilg*
ZENIA K. GILG
Attorney for Defendant
KRISTEL KUBUROVICH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Certificate of Service

I hereby certify that on October 3, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which sent notification of such filing to all

attorneys of record, including:

> AUSA Scott Simeon
> AUSA Jeffrey Schenk
> U.S. Attorney's Office
> NDCA, San Jose Branch
> 150 Almaden Blvd., Suite 900
> San Jose, CA 95113
> Telephone: 408-535-5592
> Facsimile: 408-535-5066
> scott.simeon@usdoj.gov
> jeffrey.b.schenk@usdoj.gov
>
> J. David Nick (CAL SBN 157687)
> Law Office of J. David Nick
> 345 Franklin Street
> San Francisco, ca 94102
> Telephone: (415) 552-4444
> Fax: (415) 358-5897
> jdavidnick@lawyer.com

/s/ Zenia K. Gilg
ZENIA K. GILG
Cal. SBN 171922
Law Office of Zenia K. Gilg
Sausalito Plaza
1505 Bridgeway, Suite 103
Sausalito, CA 94965
Telephone:  415.324.7071
Facsimile:  415.324.7078
zenia@jacksonsquarelaw.com